**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

*(Electronically Filed)*

| | |
|---|---|
| HEALTHCARE RESOURCES ) <br> MANAGEMENT GROUP, LLC ) <br> ) <br>           Plaintiff ) <br> ) <br> v. ) <br> ) <br> ECONATURA ALL HEALTHY WORLD, LLC, ) <br> et al., ) <br> ) <br>           Defendants ) <br> _____ ) | CASE NO.: 9:20-cv-81501-DMM |

**DEFENDANT ECONATURA ALL HEALTHY WORLD, LLC'S MOTION
FOR LEAVE TO JOIN COUNTER-DEFENDANT AND SUPPORTING
MEMORANDUM OF LAW**

Defendant, EcoNatura All Healthy World, LLC ("EcoNatura") by counsel, and pursuant to Rules 13, 15 and 20 of the Federal Rules of Civil Procedure, hereby files this motion for leave to add counter-defendant Sam Genovese to this case, and in support thereof states as follows:

**I. INTRODUCTION**

On September 3, 2020, Plaintiff, Healthcare Resources Management Group, LLC ("Plaintiff"), filed its original Complaint in this Court [D.E. 1] against Defendants NoXeno, EcoNatura, MedTerra CBD, LLC ("MedTerra") and Rejuvenol Laboratories, Inc. ("Rejuvenol"). Defendant EconNatura was served on October 17, 2020 [D.E. 7]. The Complaint asserts causes of action for alleged violations of Florida's Uniform Trade Secrets Act and Deceptive and Unfair Trade Practices Act, the federal Defend Trade Secrets Act, and a state law claim for tortious interference with a business relationship.

Plaintiff's claims stem from a failed business relationship involving the production and distribution of CBD-based products. In or around 2017, EcoNatura, NoXeno, and Plaintiff's principal and owner, Sam Genovese, engaged in discussions to bring a joint "seed to sale" CBD operation venture to reality. For reasons that are in dispute by the parties, that relationship ultimately deteriorated. Plaintiff contends that, in the course of that deterioration, EcoNatura misappropriated certain trade secrets formulated by Plaintiff, while EcoNatura contends that Plaintiff owned no such trade secrets and that, in fact, its own principal/owner violated the terms of a Non-Disclosure Agreement between the parties. EcoNatura seeks leave to file its Third Party Complaint to assert claims for breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment and quantum meruit against Mr. Genovese. Because EcoNatura's proposed claim arise from the same set of operative facts as those contained within Plaintiff's Complaint, EcoNaturea seeks leave to file its Third Party Complaint.

## II.   FACTUAL BACKGROUND

EcoNatura was founded in 1994 and later purchased by Jama Russano in 2001. Since that time, EcoNatura has developed into one of the leading developers of organic and environmentally friendly skin care, cosmetic, personal care, and aromatherapy products, including its *Peter Rabbit*, *Ruby-Blue Bunny* and *Manuka Honey Cream* product lines. In early 2016, EcoNatura first became interested in developing and selling products containing cannabidiol or "CBD" as an ingredient. That same year, EcoNatura created a full concept of CBD consumer products and began working with CBD manufacturers to explore the creation of CBD-based skin care products combining the formulations for EcoNatura's successful skin care products with those manufacturer's CBD. As part of this mission, Ms. Russano began engaging in discussions about forming a company named

"NoXeno" with the hope that the company would eventually be an industry leader in the development and sale of a full range of CBD-based products.

By this time, EcoNatura had explored possible CBD-related ventures with a handful of companies. In fact, EcoNatura had even developed a number of sample products at the manufacturing facility in New York operated by Defendant, Rejuvenol Laboratories, Inc. ("Rejuvenol"). By the summer of 2017, Ms. Russano had created and formed NoXeno with the goal of growing specific strains of CBD and formulating them in all levels of CBD consumer products.

Around this time, EcoNatura and NoXeno were introduced to Sam Genovese, who was billed as a "pharmacist" with experience and contacts in the CBD, industrial hemp, and THC industry. Not long after this introduction, Genovese introduced Ms. Russano to Jeff Fox and Robert Pinchuk, business associates of his in a CBD candy and pet product company called *FoxFire Edibles*. In November of 2017, Ms. Russano met with Genovese and his wife, Mercy Romano, in New York, where the former took them on a tour of the Rejuvenol manufacturing facility. At this time, Genovese was given samples of EcoNatura's proprietary Ruby Blue Bunny Baby Care baby lotion product, as well as samples of the EcoNatura Manuka Honey Cream skin-care product. Genovese was also introduced to the plan for the NoXeno joint venture and the concept of a "seed to sale" CBD operation.

After that meeting, EcoNatura, NoXeno, and Genovese agreed to move forward together to bring the NoXeno joint venture to fruition, which included discussions about the development of CBD-based product lines that could eventually be folded into the NoXeno joint venture umbrella. [D.E. 1, ¶ 17]. To that end, Genovese and Defendants EcoNatura and NoXeno executed a Mutual Non-Disclosure Agreement ("NDA") on January 17, 2018, to facilitate the exchange of

certain "Confidential Information." [D.E. 1, ¶¶ 16, 18]. *See* Exhibit 1 to Defendant EcoNatura's Third Party Complaint. The NDA states that it is "dated as of January 11, 2018, and is made by and between … EcoNatura All Healthy World, LLC, … and Sam Genovese …." Though listed as a "representative" of FoxFire Edibles, LLC, Plaintiff acknowledges that the parties "acted as if the [NDA] was applicable to [Plaintiff's] confidential information" as well as that of FoxFire [D.E. 1, ¶ 18].

Under the terms of the NDA, the parties were prohibited from disclosing any Confidential Information to any person except in accordance with the terms of the NDA. The NDA further provides that the Receiving Party shall not use the Confidential Information other than for the purpose of evaluating and negotiating the business transaction between the parties. "Confidential Information" was defined to include information relating to a Disclosing Party's "products, operations, processes, plan or intentions, production information, know-how, design rights, trade secrets, market opportunities, business plans, pricing, marketing strategies, and business affairs." [D.E. 1, ¶ 16].

As the joint venture began to develop, the parties began preparing the business plan, as well as presentations and other materials in an effort to solicit investors. On multiple occasions Genovese requested that EcoNatura send him samples of products that EcoNatura had previously developed, including a sample of its Ruby Blue Bunny baby lotion, for shipment to unknown customers. Genovese then informed Ms. Russano that this customer (MedTerra, though that was not known to EcoNatura at the time) was interested in having EcoNatura develop a CBD-based cream that resembled the Ruby Blue Bunny product. EcoNatura and Genovese agreed to proceed, with EcoNatura to develop the formulations while Genovese was charged with overseeing the sales to the customer. The parties agreed that, after covering all of EcoNatura's costs, Genovese and

EcoNatura would split any profits on a 50/50 basis. The two further agreed that any confidential or proprietary information shared between them would be kept confidential and disclosure would be limited as needed to have the final products produced, marketed and sold. EcoNatura agreed to these terms with the understanding that this operation would eventually be included as part of the NoXeno joint venture.

By the end of March, 2018, EcoNatura believed it had a product that was ready to go to market, with neither Genovese nor Plaintiff contributing to the creation of this product, including the formulations and/or processes, in any fashion. EcoNatura ultimately prepared a complete and final ingredient list which identified the ingredients in descending order based on the percentages of the ingredients included in the final product. This document was titled "lotion ingredients in descending order 03292018" and was authored by Ms. Russano ("the MedTerra Ingredient List"). EcoNatura provided the MedTerra Ingredient List to Genovese on or about March 29, 2018, so that the labeling of the products could be completed by MedTerra. It was understood between EcoNatura and Genovese that the MedTerra Ingredient List was to be treated as confidential and not to be disclosed except as needed to finalize the production, marketing, and sale of the final product to be marketed and sold by MedTerra. The first purchase order for EcoNatura's newly developed CBD-based cream was issued on April 16, 2018, by Medterra, who ultimately became the primary purchaser of the cream.

Eventually, for reasons that the parties dispute, the relationship deteriorated between Plaintiff and Genovese on one side, and EcoNatura, NoXeno, Medterra, and Rejuvenol on the other. In its Complaint, Plaintiff alleges that, under the protection of this NDA, it supplied EcoNatura with "various confidential and proprietary information" including a wholesale pricing matrix for Pharmalieve as well as the ingredient list and formula for its CBD-based pain cream

5

which EcoNatura was to produce. [D.E. 1, ¶ 19]. Plaintiff contends that its misgivings began when it got the sense it was being "excluded" from ongoing communications between EcoNatura and MedTerra. [D.E. 1, ¶ 36]. Specifically, Plaintiff takes issue with being copied on only some of the correspondence between the parties and alleged "unauthorized representation(s)" from EcoNatura to MedTerra. [D.E. 1, ¶¶ 31-35]. In its Complaint, Plaintiff contends that it began to shift the production and distribution of its CBD-based cream to subcontractors other than EcoNatura after "[r]ealizing that the current trajectory of its business relationship" proved unworkable. [D.E. 1, ¶ 48]. Plaintiff further contends that after that "shift," MedTerra continued to sell CBD cream produced by EcoNatura using in substantial part Plaintiff's proprietary formula, and NoXeno continued to solicit investors using the revenue stream generated by EcoNatura's sales of this cream. [D.E. 1, ¶ 56].

In contrast with the Plaintiff's allegations, EcoNatura asserts that Genovese would misrepresent to customers that it was he and/or Plaintiff that created the formulas and owned the intellectual property rights to the products developed through EcoNatura. EcoNatura asserts that Genovese even entered into contracts with customers where representations were made as to ownership of intellectual property rights, including formulas, that neither Genovese nor Plaintiff owned. Additionally, EcoNatura contends that, as part of his effort to cut EcoNatura out of the production process, Genovese breached the terms of the parties' NDA and other oral confidentiality agreements by contacting other manufacturers or vendors to "shop around" EcoNatura's products and formulas. Indeed, Genovese has shared EcoNatura's confidential and proprietary information, including but not limited to the MedTerra Ingredient List and/or the full list of ingredients of products developed by EcoNatura, as well as ingredient percentages, to

multiple manufacturers, including Pharmacanna, Inc., Cosmetic Solutions, Trinity Health Global, Pharmalieve Health and/or an unidentified product manufacturer in Arizona.

### III.   PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on September 3, 2020, and served EcoNatura with the summons and complaint on October 17, 2020. On November 10, 2020, EcoNatura timely filed its answer and affirmative defenses to the Complaint and a counter-claim against Plaintiff. Pursuant to the Court's Pretrial Scheduling Order, the deadline to amend pleadings and to join additional parties is November 16, 2020.

### IV.   ARGUMENT

#### A. EcoNatura's Amended Counter-Claim is Timely.

"An amendment to add a counterclaim will be governed by Rule 15." Fed. R. Civ. P. 13 note (2009 Amend.). EcoNatura's proposed Amended Counterclaim is timely because it is filed within twenty-one (21) days of its initial pleading, Fed. R. Civ. P. 15(a)(1)(A), and in accordance with the Court's Pretrial Scheduling Order. [D.E. 5]

Moreover, motions to amend pursuant to Rule 15 are "'committed to the sound discretion of the district court,' but that discretion 'is strictly circumscribed' by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which instructs that leave should be 'freely give[n] when justice so requires.'" *City of Miami v. Citigroup, Inc.*, 801 F.3d 1268, 1277 (11th Cir. 2015). Leave should be given "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

This is EcoNatura's first request to amend, and the motion has been filed in accordance with the Court's November 16, 2020 deadline to amend pleadings and to add parties. [D.E. 5] This

request to amend is made in good faith and is an attempt to afford finality to all parties involved. Pursuant to the Court's Pretrial Scheduling Order, trial is not scheduled to commence for over six (6) months, so no party to this case or the proposed counterclaim will suffer prejudice. Finally, the proposed counterclaim is not futile, as it raises claims for declaratory relief regarding ownership of the same purported "trade secret" at the heart of this case and damages related to disclosures of related confidential information belonging to EcoNatura.

Because no *Foman* factors warranting denial of leave to amend are present, the Court should grant EcoNatura leave to file the attached, proposed counterclaim. *See Hester v. Int'l Union of Operating Eng'rs, AFL-CIO*, 941 F.2d 1574, 1578 (11th Cir. 1991) ("Thus, in the absence of any apparent reason, leave to amend should be granted.").

### B. This Court Should Grant EcoNatura Leave to Join Genevese as a Counter-Defendant.

This Court should grant EcoNatura leave to assert its claims against Genovese. For joinder under Fed. R. Civ .P. 20(a)(2), a party must establish two prerequisites: "(1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined." *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 531 (M.D. Fla. 2012). "[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir.2002).

In determining whether claims arise from the same transaction or occurrence, or series of transactions or occurrences, courts in the Eleventh Circuit apply the "logical relationship" test. *See Smith v. Trans–Siberian Orchestra*, 728 F.Supp.2d 1315, 1319 (M.D.Fla.2010). Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim. *Id*. In other words, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). Importantly, federal courts in the Eleventh Circuit have repeatedly characterized this as a "loose standard," which permits a "broad realistic interpretation in the interest of avoiding a multiplicity of suits." *U.S. ex rel. Mueller v. Eckerd Corp.*, 184 F.R.D. 686, 687 (M.D. Fla. 1999)

Here, in its Third Party Complaint, EcoNatura seeks to assert claims against Sam Genovese, a principal and owner of the Plaintiff, that arise directly from the same transaction, occurrence, or series of transactions or occurrences, as those concerning the claims asserted against them by Plaintiff. Moreover, the causes of action in each, and the factual allegations underpinning them, share questions of law and fact common to all defendants, including those that will arise later in this action. Fed. R. Civ. P. 20(a)(2).

Plaintiff claims rest on the same joint venture, NoXeno, that undergirds EcoNatura's proposed claims against Genovese. Each of the party's respective claims involve not only the same joint venture, but also common questions of law and fact as it pertains to the development, marketing, and sale of the CBD-based creams and the formulas underlying each. Indeed, both the NDA relied upon in Plaintiff's own Complaint as well as similar representations made by Genovese lay part of the groundwork for EcoNatura's breach of contract claims against Genovese.

9

Both claims are likely to involve the same set of facts and legal issues, namely, whether and to what extent each party improperly utilized "Confidential Information" supplied by the other.

In addition to the issues pertaining to the source and handling of the proprietary information exchanged between the parties, at the heart of both parties' claims is the disagreement as to the nature and reasons for the dissolution of the relationship between Genovese and Ms. Russano. Plaintiff contends that EcoNatura and MedTerra improperly cut him out of the production process, while EcoNatura contends that Plaintiff, through Genovese, went around EcoNatura's back to "shop around" its products and formulas, in breach of the parties' agreements.

Given the above, it is evident that the claims involve the same set of operative facts, at least to an extent sufficient to satisfy the "loose standard" required by this Circuit's precedent. Accordingly, in an effort to avoid a multiplicity of suits, EcoNatura respectfully request that this Court exercise its discretion and grant it Leave to file its Third Party Complaint against Sam Genovese.

## **LOCAL RULE 7.1(A)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(A)(3), undersigned counsel for EcoNatura certifies that EcoNatura has attempted to confer with counsel for Plaintiff in a good faith effort to resolve the issue raised in this motion. On November 16, 2020, Counsel sent emails to each attorney identified as representing Plaintiff in connection with this case to inquire as to whether Plaintiff would oppose a motion to add Genovese as a party. Opposing counsel has not, as of time of filing, responded. Once a response is received, the undersigned will supplement this certificate if the parties agree to the relief sought herein.

CASE NO.: 9:20-cv-81501-DMM

Dated: November 16, 2020

Respectfully submitted,

*/s/ Greg J. Weintraub*
Greg J. Weintraub
LASH & GOLDBERG, LLP
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL  33131-2158
Phone: (305) 347-4040
Fax: (305) 347-4050
gweintraub@lashgoldberg.com

-and-

Brian P. McGraw (pro hac vice to filed)
Matthew P. Dearmond (pro hac vice to be filed)
MIDDLETON REUTLINGER
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
Email: bmcgraw@middletonlaw.com

COUNSEL FOR DEFENDANT
NOXENO HEALTH SCIENCES, INC.

CASE NO.: 9:20-cv-81501-DMM

# CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

/s/ Greg J. Weintraub
**GREG J. WEINTRAUB**

**Service List:**

Leon F. Hirzel, Esq.,
Patrick G. Dempsey, Esq.
Alec P. Hayes, Esq.
HIRZEL DREYFUSS & DEMPSEY, PLLC
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Phone: 305-615-1617
*Counsel for Plaintiff, HCRMG*

Adam T. Rabin
arabin@mccaberabin.com
e-filing@mccaberabin.com
Robert C. Glass
rglass@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Ste. 201 West
Palm Beach, FL 33401
561.659.7878
*Counsel for MedTerra CBD, LLC*

Eric Lee
lee@leeamlaw.com Lee
& Amtzis, P.L.
5550 Glades Road, Ste. 401 Boca
Raton, FL 33431 561.981.9988
*Counsel for Rejuvenol Laboratories, Inc.*