# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| HEALTHCARE RESOURCES MANAGEMENT GROUP, LLC | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CASE NO.: 9:20-cv-81501-DMM |
| ECONATURA ALL HEALTHY WORLD, LLC, et al., | ) ) ) | |
| Defendants | ) ) | |
| _____ | ) | |
| ECONATURA ALL HEALTHY WORLD, LLC | ) ) | |
| Counterclaim-Plaintiff | ) | |
| v. | ) ) | |
| HEALTH RESOURCES MANAGEMENT GROUP, LLC and SAM GENOVESE 1288 NW 16th Street Boca Raton, Florida 33486 | ) ) ) ) ) ) | |
| Counterclaim Defendants | ) ) | |
| _____ | ) | |

**DEFENDANT ECONATURA ALL HEALTHY WORLD, LLC's ]PROPOSED] FIRST**
**AMENDED COUNTERCLAIM**

Defendant/Third Party Plaintiff, EcoNatura All Healthy World, LLC ("EcoNatura" or "Third Party Plaintiff"), by counsel, pursuant to Federal Rules of Civil Procedure 13, 15 and 20, files the following First Amended Counterclaim against Plaintiff/Counterclaim Defendant, Healthcare Resources Management Group, LLC ("Healthcare" or "Counterclaim Defendant"), and Mr. Sam Genovese ("Genovese" or "Third Party Counterclaim Defendant"), and in support thereof states as follows:

## INTRODUCTION

1.      This is a counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201, 2202 and Federal Rule of Civil Procedure 57, to declare that (a) Healthcare does not own or possess a trade secret for the formula, ingredients, percentages of ingredients and/or processes used to blend the ingredients in connection with the CBD-based pain cream (or any other product) created, formulated, designed, manufactured and sold by or on behalf of EcoNatura or the CBD-based pain cream, and (b) EcoNatura has not misappropriated any alleged trade secret that is claimed to be owned by Healthcare in connection with the CBD-based pain cream sold by or on behalf of EcoNatura.

2.      Healthcare claims to own or possess trade secrets under both the Florida Uniform Trade Secrets Act, Florida Statutes §§688.01 *et seq*., and the Defend Trade Secrets Act, 18 U.S.C. §§1836 *et seq*., and has filed the present lawsuit against EcoNatura and other defendants claiming that EcoNatura has misappropriated those trade secrets.

3.      Healthcare alleges that it owns and/or possesses the asserted trade secrets, which consists of the formula for a CBD-based pain cream, including the ingredients, the relative percentages of each individual agreement, and the manner in which the specific amount of each ingredient gets blended with the remaining ingredients to form the finished product ("the Formula").

4.      Healthcare further alleges that EcoNatura unlawfully misappropriated the Formula and used it to manufacture a CBD-based pain cream product sold by or on behalf of EcoNatura.

5.      However, the Formula was created by EcoNatura and any intellectual property rights that exist to the Formula are not owned and/or possessed by Healthcare.  And, EcoNatura

has not otherwise assigned or transferred any rights it may own or enjoy over to Healthcare in any fashion.

6.      Further, Healthcare did not provide EcoNatura with any confidential or propriety information that was used by EcoNatura to create the Formula for and/or the complained-of CBD-based pain cream that is manufactured and sold by or on behalf of EcoNatura.

7.      Thus, there is a present case or controversy as to whether Healthcare owns or possess protectable trade secrets in and to the Formula as alleged in the Complaint and/or as to whether EcoNatura misappropriated any of Healthcare's alleged trade secrets. This Action involves an actual controversy and need for a declaration of the parties' rights and interest between the parties within the meaning and import of 28 U.S.C. § 2201, *et seq*.

8.      This is also a Counterclaim against Third Party Counterclaim Defendant for breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq*., unjust enrichment and *quantum meruit*. Plaintiff is seeking compensatory damages, unjust enrichment damages, pre- and post-judgment interest, and an award of its costs and attorney's fees.

## <u>VENUE AND JURISDICTION</u>

9.      This Court has subject matter jurisdiction over the federal claims asserted herein under Title 35 of the United States Code and 28 U.S.C. §§ 1331, 2201 and 2202 in that an actual controversy exists between EcoNatura and Healthcare concerning the subject matter of Healthcare's Complaint and EcoNatura's claims in this Counterclaim. The Court has supplemental jurisdiction over any of the remaining claims under Florida state law pursuant to 28 U.S. Code § 1367.

10.     Venue in the Southern District of Florida is proper pursuant to 28 U.S.C. § 1391 because Genovese resides there and because a substantial proportion of the acts giving rise to this Third Party Complaint occurred in the Southern District of Florida, and because relevant evidence is concentrated in that District.

11.     Venue is also proper in this District for claims brought under the NDA, as defined and set forth in paragraphs 27-31 herein, because Genovese has substantially invoked the litigation process in this District through the filing of the present Complaint (D.E. 1) by Genovese's company, Healthcare Resources Management Group, LLC ("Plaintiff") and the active pursuit of claims for trade secret misappropriation, violation of the Delaware Uniform Deceptive Practices Act, and for tortious interference under Florida law against EcoNatura (and others) in this case as well as the case previously dismissed, Case No. 9:19-cv-81700.

## THE PARTIES

12.     EcoNatura is a Delaware limited liability company. The members of EcoNatura are Jama Russano and Richard Russano.

13.     Genovese is an individual residing in the State of Florida with an address at 1288 NW 16th Street, Boca Raton, Florida 33486.  Genovese is one of the members of the Plaintiff in this action.

## FACTS GIVING RISE TO THE THIRD PARTY COMPLAINT

### *EcoNatura and its History in Formulating Successful Skin Care Products*

14.     EcoNatura was created in 1994 and then later purchased by Jama Russano in 2001 and since that time has developed into one of the leading developers of organic and environmentally friendly skin care, cosmetic, personal care and aromatherapy products.  Econatura takes pride in the fact that it was one of the first in the industry to provide organic and

environmentally friendly products – selling such products under its ECONATURA® brand name since as early as 1994.  EcoNatura has focused on building the first line of skin care products independently tested and certified according NSF/ANSI 305: Personal Care Standards. All brands are certified free of endocrine disruptors (natural and synthetic) and harsh chemical ingredients based on its extensive "NO LIST" – the most complete list of industrial irritants, carcinogens, and hormone disruptors typically used in skin care products.

15.     Over the years EcoNatura has been successful in developing and selling a number of products under its *Peter Rabbit*, *Ruby-Blue Bunny*, and *EcoNatura* brands. Three of EcoNatura's most popular and best-selling products over the years have been its *Ruby Blue Bunny* brand baby lotion and shampoo and its EcoNatura brand *Manuka Honey Cream*.

16.     EcoNatura's owner, Jama Russano, has over 40 years of experience in personal care products and 20 years of experience developing and manufacturing natural personal care products, including but not limited to topical pain creams.  Ms. Russano is an industry expert on clean ingredients as well as on the adverse effects of endocrine disruptors and harsh chemicals used in skin care and other cosmetic products.  Ms. Russano has even testified before Congress on the harmful effects of silicones on children.  In 2006 Ms. Russano created the first endocrine disruptive free skin care line for adults and children.  The formulations that were used for this product line, and the science behind it, has formed the backbone and basis for most all the product formulations created by Ms. Russano and/or EcoNatura over the years.

***EcoNatura Enters the CBD Industry***

17.     Sometime in early 2016, EcoNatura and Ms. Russano first became interested in developing and selling products containing cannabidiol or "CBD" as an ingredient.  As part of this, EcoNatura began engaging in discussions with Stephen Weissenfeld, and then later in 2016,

Mr. Warren Wise, and others, about forming a company named "NoXeno" with the hope that NoXeno would eventually be an industry leader in the development and sale of a full range of CBD-based products.

18.     At that time, EcoNatura and Ms. Russano were in the process of creating a full concept of CBD consumer products, including personal care products, based on the science of offering consumers clean healthy products without the use of damaging and harsh chemicals.

19.     Soon thereafter, and at least as early as July of 2016, EcoNatura began working with CBD manufacturers to explore the creation of CBD-based skin care products combining the formulations for EcoNatura's successful skin care products with the manufacturer's CBD.

20.     EcoNatura explored possible CBD-related ventures with a handful of companies at this time.  In fact, EcoNatura had even developed a number of sample CBD-based products before the end of 2016. These products were developed at the manufacturing facility in New York operated by Defendant, Rejuvenol Laboratories, Inc. ("Rejuvenol").

21.     By the summer of 2017, Ms. Russano and Mr. Wise created and formed NoXeno Health Sciences, LLC ("NoXeno"), a company with the goal of growing specific strains of CBD and formulating them in all levels of CBD consumer products, including for private label to brands with the concept the products would be made without the use of harsh chemicals or pesticides.

*EcoNatura is Introduced to Genovese*

22.     In June of 2017, EcoNatura and NoXeno began further exploring the possibility of creating a joint venture that would work toward the NoXeno concept of a "seed to sale" operation of a CBD-product development, manufacture, and sale business.  As part of this, Ms. Russano and Mr. Wise engaged in discussions with group operating in the CBD business at the time under the name Full Impact, LLC, led by Jeff Moore and Jamie Goldstein of Delray Beach, Florida

(originally this group used the name "Pharmacanna").  Around this time, Mr. Moore and Mr. Goldstein introduced Ms. Russano to Genovese by telephone. Genovese was introduced as a "pharmacist" with experience and contacts in the CBD, industrial hemp, and THC industry, including primarily in the CBD grow area.

23.     Not long after first contact with Genovese, Ms. Russano learned that the group led by Mr. Moore and Mr. Goldstein had broken up due to some problems and were moving in different directions. Mr. Goldstein suggested to Ms. Russano that NoXeno and EcoNatura should continue to try to work with Genovese should they proceed with plans to work in the CBD industry.

24.     EcoNatura then began engaging in discussions with Genovese about the development of certain CBD-based products, which then included CBD-based gelcaps, tinctures and skin creams.

25.     As part of this, in late fall of 2017, Genovese introduced Ms. Russano to his business associates in a CBD candy and pet product company called *FoxFire Edibles* – Mr. Jeff Fox, Esq. and Mr. Robert Pinchuck.  In November of 2017, Ms. Russano met with Genovese and his wife, Mercy Romano, along with Mr. Fox, in New York.  Ms. Russano took them on a tour of the Rejuvenol manufacturing facility in Long Island.  At this time, Ms. Russano gave Genovese and the others samples of EcoNatura's proprietary *Ruby Blue Bunny Baby Care* baby lotion product, as well as samples of the *EcoNatura Manuka Honey Cream* skin-care product.  It was also at this meeting that Genovese was introduced to the plan for the NoXeno joint venture and the concept of a "seed to sale" CBD operation.

26.     Soon after this meeting, EcoNatura, NoXeno, Genovese, Pinchuck, and Fox agreed to move forward together in an attempt to bring the NoXeno joint venture to reality.

27.     On January 17, 2018, EcoNatura, NoXeno, FoxFire Edibles, Mr. Genovese, Mr. Fox and Mr. Pinkchuck executed a Mutual Non-Disclosure Agreement, a copy of which is attached as **Exhibit 1** ("the NDA").

28.     The NDA states that "this Mutual Non-Disclosure Agreement … dated as of January 11, 2018, is made by and between … EcoNatura All Healthy World, LLC., … **and Sam Genovese** …." (emphasis added).

29.     The NDA further states that "Confidential Information means all information disclosed … to the other … including, but without limitation, information relating to the Disclosing Party's products, operations, processes, plans or intentions, product information, know-how, design rights, trade secrets, market opportunities, business plans, pricing, marketing strategies, and business affairs."

30.     The NDA further provides that the Receiving Party shall not, at any time, use the Confidential Information other than for the purpose of evaluating and negotiating the business transaction between the parties and/or shall not disclose the Confidential Information to any person except in accordance with the terms of the agreement.

31.     The NDA precludes the disclosure of confidential information by the Receiving Party without the express written consent of the Disclosing Party unless one of the preconditions of paragraph 4 of the NDA has been met.

***Development of the CBD-Cream (and other) Products***

32.     As the joint venture began to develop, the parties began preparing the business plan as well as presentations and other materials to try and solicit investors for the joint venture.

33.     While the parties were working on the terms of the NoXeno business plan, as well as preparing materials to present to potential investors, Genovese requested that EcoNatura send

him samples of some of the products that EcoNatura had developed with Rejuvenol – as well as other Rejuvenol and/or EcoNatura product samples – because they were working on getting a potential salon customer in Florida.  Samples were sent but EcoNatura was not made aware of any firm business opportunities or customers that had been developed as a result.

34.     Then, in February of 2018, Genovese called Ms. Russano and requested that a sample of EcoNatura's *Ruby Blue Bunny* baby lotion be shipped to a potential customer.  Ms. Russano shipped the sample to an unknown company in California – which ultimately turned out to be the Co-Defendant MedTerra.  Ms. Russano was told by Genovese that MedTerra really liked the consistency and feel of the baby lotion and had inquired as to whether a similar CBD-based cream could be made.

35.     Days after shipping the sample, Genovese informed Ms. Russano that this customer (MedTerra, though that was not known by EcoNatura at the time) was interested in having EcoNatura develop a CBD-based cream which resembled the *Ruby Blue Bunny* baby lotion product.  EcoNatura and Genovese agreed to proceed with the development and sale of the product. Genovese and EcoNatura agreed that EcoNatura would develop the formulations and Genovese would oversee the sales to the customer and, after covering all of EcoNatura's costs (though EcoNatura never agreed to disclose the specific costs to Genovese), Genovese and EcoNatura would split any profits made from the sale of the CBD-based products 50/50. Genovese and EcoNatura further agreed that any confidential or proprietary information shared between them would be kept confidential and disclosure would be limited as needed to have the final products produced, marketed and sold. EcoNatura agreed to these terms with the understanding that this operation would eventually be included as part of the NoXeno joint venture.  No written agreement

was entered between the parties aside from the original NDA referenced in paragraphs 27-31, above.

36.     Following this agreement EcoNatura was ready to proceed with production since it already had a formula and ingredients based on its *Ruby Blue Bunny* baby lotion product, as well as the sample CBD-based creams that had previously been developed in 2016 and 2017, and had the manufacturing facility and operation in place through Rejuvenol.

37.     It was around this time that Genovese asked Ms. Russano not to say anything about this deal to his business partner, Robert Pinchuck. He even went as far as asking Ms. Russano to refer to herself as under an alias – "Kim Youngling" – so his business partners and others in the industry did not know he was working with Ms. Russano.

38.     Genovese further indicated at that time that he had worked with an Arizona company that developed a topical CBD cream that had sold a few thousand products to a customer, but that the customer did not like the final product.

39.     Sometime in March or April of 2018, Genovese sent EcoNatura a sample of this CBD-based cooling cream that EcoNatura later learned was a sample of a product that had been previously produced in limited amounts with the intention of selling under the Pharmacanna, MedTerra and/or Pharmalieve brands. The formulation for this product, which Plaintiff now claims to own, was actually developed by Kathy Tucker in Arizona and/or Pharmacanna, Inc.  Any intellectual property rights that may have existed to the formula and/or process of manufacturing this product, including any trade secret rights, were and are not owned or possessed by Plaintiff or Genovese.

40.     In any event, as to the sample, EcoNatura received a small box that contained a white container with a pump on top, along with a few empty containers. The sample product had

the consistency of water and had a strong odor of menthol.  EcoNatura considered this to be a failed product with no commercial viability.

41.     Throughout February and March, 2018, EcoNatura began working on refining the *Ruby Blue Bunny* baby lotion formula into a CBD-based cream at the Rejuvenol facility in New York.  Ultimately, EcoNatura, at the direction of Ms. Russano, used that formula as the primary base formula for the CBD pain cream but swapped out certain essential oils, added a couple of ingredients, and altered the process by which the ingredients were blended.

42.     By the end of March, 2018, EcoNatura believed it had a product that was ready to go to market. Neither Genovese nor Plaintiff contributed to the creation of this product, including the formulations and/or processes, in any fashion.  EcoNatura ultimately prepared a complete and final ingredient list which identified the ingredients in descending order based on the percentages of the ingredients included in the final product.  This document was titled "lotion ingredients in descending order 03292018" and was authored by Ms. Russano ("the MedTerra Ingredient List").  EcoNatura also maintained a complete listing of the percentages of ingredients used as well as detailed procedures for the process of blending the ingredients together during production.  These highly confidential and proprietary processes were stored on special computers in New York to which only a small group of people had access.

43.     EcoNatura provided the MedTerra Ingredient List to Genovese on or about March 29, 2018.  The MedTerra Ingredient List was provided to Genovese so that the labeling of the products could be completed by MedTerra.  It was understood between EcoNatura and Genovese that the MedTerra Ingredient List was to be treated as confidential and not to be disclosed except as needed to finalize the production, marketing, and sale of the final product to be marketed and sold by MedTerra.

44.      By April 15, 2018, the first purchase order issued for EcoNatura's newly developed CBD-based pain cream. This purchase order was issued by MedTerra – who ultimately became the primary purchaser of EcoNatura's CBD-based pain cream. MedTerra purchased the products and then branded and sold them under the MedTerra brand. The first products shipped to MedTerra starting in June of 2018.

45.      Around this same time, purchase orders for the same product were issued by/to Pharmacanna, Inc. and what was purported to be the Pharmalieve brand operated by Genovese. However, the Pharmalieve products were ordered in a limited amount (usually around 60-90 units) which fell far short of EcoNatura's minimum purchase requirements. Therefore, those products were often simply lumped in with the Pharmacanna products on the purchase orders and then provided to Genovese unlabeled at his request. Upon information and belief, Genovese and/or Plaintiff then labeled those products with the Pharmalieve brand.

46.      On April 16, 2018, Genovese and Russano discussed the possibility of producing additional CBD-based products, including shampoos, conditioners, and personal care products – again with the thought that these products would eventually fall under the NoXeno joint venture. Through these discussions, Genovese attempted to get access to EcoNatura's proprietary formula for the *Manuka Honey Cream* pain cream – which has been one of the most successful products ever produced or sold by EcoNatura. Ms. Russano refused to provide this information to Genovese or Plaintiff and indicated that she had invested too much time and money into the creation of that formula and did not want it reproduced for anyone.  However, she did confirm that she could create and/or formulate a similar product without some of the ingredients contained in the *Manuka Honey Cream*.

47.     Later in the spring and/or early summer of 2018, EcoNatura was approached by Genovese about an opportunity to produce a CBD-based pain cream for another potential customer, Amanda Kloots in New York.  Genovese suggested to EcoNatura that they produce the same product, using the same formula, as the products that were then being produced for MedTerra.  However, EcoNatura did not want to create problems with MedTerra so Ms. Russano agreed that she would come up with a new formula to use for the Amanda Kloots products.

48.     In creating the new product and formula for Amanda Kloots, EcoNatura again used the *Ruby Blue Bunny* baby lotion as the starting point. The formula and ingredients were different than the formula and ingredients used for the MedTerra product. This formula was also used in connection with the production of a similar product for Darryl Goldstein and a company he was associated with named Purmed.

49.     In May of 2018, Genovese asked EcoNatura whether it already had formulas for the creation of either a CBD-based eye serum and/or CBD-based psoriasis cream for MedTerra. The parties even exchanged emails where Genovese conceded that he didn't have any ingredients or formulas for such products and asked EcoNatura whether it could provide a list of ingredients to give to MedTerra.  A copy of this email exchange is attached as **Exhibit 2**.  EcoNatura confirmed that formulas had been developed and that the products could be made.  EcoNatura later provided Genovese with an ingredient list and Genovese shared that list with MedTerra.  EcoNatura and Genovese understood that the ingredient list and/or percentages of ingredients were considered to be confidential and/or proprietary to EcoNatura and were not to be disclosed except as needed to produce, market, and/or sell any final product to be sold by MedTerra.

50.     In June of 2018, Genovese informed EcoNatura that MedTerra was interested in a CBD-based roll-on product. On June 11, 2018, Genovese sent an email to EcoNatura asking

whether there was a formula for such a product – again conceding that neither he nor Plaintiff had any knowledge of the existence of such a formula. A copy of the email from Genovese to EcoNatura asking about the existence of the formula is attached as **Exhibit 3**.

51.     In August of 2018, Genovese asked EcoNatura to send him the full ingredient list for the Amanda Kloots CBD-based cooling cream product.  On August 21, 2018, EcoNatura sent to Genovese by email the complete ingredient list sorted in descending order. EcoNatura and Genovese understood that the ingredient list and/or percentages of ingredients were considered to be confidential and/or proprietary to EcoNatura and were not to be disclosed except as needed to produce, market, and/or sell any final product to be sold by Amanda Kloots.

52.     On November 18, 2018, and at the request of MedTerra, EcoNatura sent an email to MedTerra and copied Genovese. This email contained the complete ingredient list, including the percentages of all ingredients used in the formulation, for the CBD-based pain cream that had been developed for MedTerra.  The email contained the disclaimer that "contents in this document is intended for the person listed and is confidential. Please do not disseminate without the written approval of EcoNatura All Healthy World, LLC."

53.     EcoNatura continued to work on and adjust the Amanda Kloots CBD-based cooling cream as it worked to get a final product ready to go to market.  On January 8, 2019, EcoNatura sent Genovese an updated list of ingredients for the formulation in descending order. When EcoNatura sent this updated ingredient list, the email indicated that "This is a proprietary formulation and falls under 'Trade Secret' and can't be duplicated, reverse engineered without the written consent of EcoNatura All Healthy World, LLC."

54.     On February 11, 2019, Genovese sent EcoNatura an email which contained a list of ingredients and asked Ms. Russano whether this list reflected the final formula for the Amanda

Kloots product. Genovese had no idea what the actual ingredients were to the formula he is claiming his company owned.

55.     On February 14, 2019, EcoNatura had finalized the formula for the Amanda Kloots product and circulated to Genovese the final ingredient list as an attachment to an email – with the attachment being titled "CHILL Updated Ingredient Deck 02142019" – which was authored by Ms. Russano. Ms. Russano further explained to Genovese the changes that were made in the formulation and why those changes were made. A copy of the cover email is attached as **Exhibit 4**. EcoNatura and Genovese understood that the ingredient list and/or percentages of ingredients were considered to be confidential and/or proprietary to EcoNatura and were not to be disclosed except as needed to produce, market, and/or sell any final product to be sold by Amanda Kloots.

56.     Ultimately, the Amanda Kloots product was created and sold to Amanda Kloots and then marketed and sold by Amanda Kloots as a cooling cream under the CHILL brand – and the products were first shipped to Amanda Kloots in April of 2019. Neither Genovese nor any person or business entity associated with Genovese, had any involvement in the creation and/or development of the formula and/or process to make this product.

57.     Every time customers would ask Genovese or Plaintiff about ingredients and formula for the products he would defer to EcoNatura since he had no knowledge of the formulas or how the products were created.

58.     Often times Genovese would misrepresent to customers that it was he and/or Plaintiff that created the formulas and owned the intellectual property rights to the products developed through EcoNatura when that was plainly not the case.  Genovese and/or Healthcare even entered into contracts with customers where representations were made as to ownership of intellectual property rights, including formulas, that neither Genovese nor Healthcare owned.

59.     EcoNatura has never assigned or otherwise transferred any rights it had or has to its proprietary formulas for any of the various CBD-based products that were developed before, during or after the business relationship between EcoNatura and Genovese, Healthcare, and/or any other entity associated with or owned by Genovese.  Nor has EcoNatura ever assigned any rights it had or has to its proprietary formulas for the *Ruby Blue Bunny* products or the *Manuka Honey Cream* products.

60.     The sole contributions made by Mr. Genovese and/or Healthcare to the creation and production of any of the CBD-based products at issue here were to occasionally source the purchase of the physical ingredients that were used in the products and to articulate the needs of customers like MedTerra where changes in the consistency of the products or packaging were needed.  Neither Genovese nor Plaintiff made any contributions to the creation and development of the CBD-based eye serum, psoriasis cream and/or roll on products that were developed by EcoNatura.

***Termination of the Relationship with Mr. Genovese***

61.     By early 2019, the relationship between EcoNatura and Genovese began to deteriorate.

62.     Much of the tension was initially created by the fact that Genovese sent to EcoNatura another NDA on January 22, 2019. This time Genovese had yet another company listed in the agreement that he was apparently associated with in some way – Trinity Health Global LLC. EcoNatura had never heard of this entity up until then and perceived the agreement as a means for Genovese and/or one of his companies to attempt to have EcoNatura transfer ownership rights to EcoNatura's proprietary formulas and/or otherwise disseminate EcoNatura's confidential

information without permission. EcoNatura refused to sign the agreement and never gave Genovese permission to share any confidential information with Trinity Health Global LLC.

63.     And then on March 3, 2019, Genovese sent EcoNatura a "Subcontractor Agreement" for execution.  EcoNatura believed this agreement was an underhanded attempt by Genovese to have EcoNatura transfer ownership rights to the various CBD product formulations that it had developed and provided to Genovese.  EcoNatura refused to sign this agreement.

64.     EcoNatura later learned that Genovese had entered into a NDA with a cosmetic manufacturer named Cosmetic Solutions in Florida through the Trinity Health entity.  However, EcoNatura never gave permission to Genovese to enter into such an agreement and, more importantly, never gave permission to Genovese to share any of EcoNatura's proprietary formulas, ingredients, confidential materials or trade secrets with either Trinity Health Global LLC, or Cosmetic Solutions, LLC.

65.     In April and May of 2019, EcoNatura learned that Genovese was attempting to go behind EcoNatura's back by contacting other manufacturers to "shop around" EcoNatura's products and formulas in an effort to cut EcoNatura out of the production process.

66.     EcoNatura also learned that Genovese had represented to MedTerra that he had met with Rejuvenol to arrange for special pricing and to further explore the possibility of removing EcoNatura from the production process.

67.     Around this same time, EcoNatura learned that Genovese had shipped a number of sample CBD-based cream products that had been developed by EcoNatura to alternative manufacturers, including Cosmetics Solutions.  Presumably this was done in an attempt to reverse engineer the product formulations that were developed by EcoNatura.

68.     Even back in March of 2019, Genovese reached out to Warren Wise and Charles Weber, two of the leads on the NoXeno joint venture project, to complain about EcoNatura and undermine its standing within the proposed joint venture. Genovese threatened to "move the business even if it means that I have to pay to reformulate every product." Genovese essentially acknowledged to NoXeno that if he did "move the business" that he could no longer use EcoNatura's formulas.  Genovese also threatened to remove the CBD-based white label products from the NoXeno joint venture.

69.     On or around May 17, 2019, Genovese informed EcoNatura that he was shopping for new vendors so that EcoNatura and Rejuvenol could be replaced in the production process.

70.      Realizing the relationship was not salvageable, and suspicious of both Genovese's billing practices and attempts to "shop around" EcoNatura's formulas and other confidential and proprietary information, EcoNatura sent Genovese a formal termination letter on June 7, 2019.  In this letter EcoNatura warned Genovese that "BE ADVISED: EcoNatura formulations, concepts, processes, business plans and documents shared are proprietary/trade secrets and protected as such and can't be disseminated or used in any manor, nor recreated, duplicated, reverse-engineered or tweaked in any manner without written consent from EcoNatura or [Russano]." EcoNatura further stated that "feel free to go to another factory and make up your own formulations as long as they don't come anywhere close to mine."

71.     Following termination of the business relationship with Genovese, EcoNatura has continued to produce CBD-based products, including the CBD-based pain creams, through the Rejuvenol manufacturing facility and then sold those products to MedTerra (at MedTerra's request). All of these products use the proprietary formulas developed by EcoNatura that ultimately derived from the *Ruby Blue Bunny* products.

CASE NO.: 9:20-cv-81501-DMM

72.     EcoNatura eventually learned that Genovese set up a company in Florida named Pharmalieve Health, LLC ("Pharmalieve"). Genovese is the registered agent for Pharmalieve. Pharmalieve is managed by Genovese's wife, Mercy Romero.

73.     Upon information and belief, Pharmalieve operates a website at the domain name pharmalieve.com ("the Pharmalieve website").  The Pharmalieve website purports to offer for sale a proprietary line of organic, all natural, pharmaceutical grade hemp products, designed for the healthcare and veterinary markets. One of the products offered for sale on the Pharmalieve website includes a CBD-based "soothing muscle cream" that is virtually identical to the CBD-based pain creams developed by EcoNatura.

74.     Further, since the termination of the relationship between EcoNatura and Genovese, EcoNatura has discovered that Genovese shared EcoNatura's confidential and proprietary information, including but not limited to the MedTerra Ingredient List and/or the full list of ingredients of products developed by EcoNatura, as well as proprietary product concepts, and upon information and belief, has also disclosed ingredient percentages, to Pharmacanna, Inc., Cosmetic Solutions, Trinity Health Global, Pharmalieve, and/or an unidentified product manufacturer in Arizona.  Such disclosure was without the permission or consent of EcoNatura.

75.     Upon information and belief, Genovese has also disclosed and/or used without permission, EcoNatura's confidential and proprietary information, including but not limited to the MedTerra Ingredient List and/or the full list of ingredients and percentages of ingredients for products developed by EcoNatura during the relationship between Genovese and EcoNatura, by sharing that confidential material to other third parties before, during and after Genovese was "shopping around" the EcoNatura products to other manufacturers and vendors.

CASE NO.: 9:20-cv-81501-DMM

76.     Had Genovese or Healthcare actually owned formulas or other trade secrets for CBD-based products and/or had the ability to manufacture products based on those formulas they would have never needed EcoNatura to develop and produce such products for MedTerra, Pharmacanna, Amanda Kloots, Purmed or any other customer or potential customer.

## COUNT I
## DECLARATORY JUDGMENT OF NO OWNERSHIP
## OR POSSESSION OF TRADE SECRET
### (Against Healthcare and Genovese)

77.     EcoNatura incorporates paragraphs 1-76 by reference.

78.     Healthcare asserts that it owns a proprietary trade secret, under the Defend Trade Secrets Act as well as the Florida Uniform Trade Secrets Act, in and to a CBD-based pain cream that consists of the combination of specific ingredients, relative percentages of ingredients, and the manner in which the specific amount of each ingredient gets blended with the remaining ingredients to form the finished product.  Specifically, Healthcare asserts that the CBD-based pain cream formula (and manner of production) for the CBD-based pain cream that was produced by EcoNatura for sale by MedTerra, Pharmacanna, Purmed, and/or Amanda Kloots, is proprietary to and/or otherwise owned by Healthcare ("the Alleged Trade Secret Formulas").

79.     However, any trade secret or other proprietary or other intellectual property rights that may exist to the aforementioned CBD cream and/or Alleged Trade Secret Formulas were not developed or created by Healthcare and are not otherwise owned or possessed by Healthcare.

80.     Healthcare has no proprietary rights in and to the Alleged Trade Secret Formulas and/or any formula or process used to create the CBD-based products set forth in paragraphs 32-60 that were sold by MedTerra, Pharmacanna, Purmed, Amanda Kloots and/or any other customer of Healthcare or EcoNatura.

CASE NO.: 9:20-cv-81501-DMM

81.     As stated in paragraphs 32 through 60, above, the Alleged Trade Secret formulas and/or the aforementioned CBD-based cream products that were and are sold by MedTerra, Pharmacanna, Purmed, Amanda Kloots and/or other customers were all created and developed by and through EcoNatura.

82.     An actual and justiciable controversy exists between EcoNatura and Healthcare as to the issue of whether Healthcare owns or possesses the trade secret rights it claims to own or possess in the Complaint.

83.     EcoNatura is entitled to a declaratory judgment from this Court that Healthcare does not own or possess any trade secret or proprietary rights of any kind in, to, and in connection with the CBD-based cream products that have been developed and produced by EcoNatura, manufactured by Rejuvenol, and ultimately sold by MedTerra which are the subject of the claims set forth in Healthcare's Complaint.

<u>**COUNT II**</u>
**DECLARATORY JUDGMENT OF NO MISAPPROPRIATION**
**(Against Healthcare and Genovese)**

84.     EcoNatura incorporates paragraphs 1-76 by reference.

85.     Healthcare asserts that EcoNatura has misappropriated the Alleged Trade Secret Formulas as set forth in paragraph 78, above, and as otherwise set forth in Healthcare's Complaint, under both the Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act.

86.     As more fully set forth in paragraph 32 through 60 of the Counterclaim, above, the CBD-based cream products that were developed and produced by EcoNatura, manufactured by Rejuvenol, and eventually sold by MedTerra, Pharmacanna, Purmed, Amanda Kloots and/or other customers, and/or any and all other products produced by EcoNatura which Healthcare claims violate the trade secret rights of Healthcare, were all created and developed by and through

EcoNatura using proprietary formulas that were independently developed by EcoNatura without using anything that could be considered proprietary to Healthcare.

87.     EcoNatura has never used any trade secret formula or process claimed to be owned or possessed by Healthcare.

88.     EcoNatura has never used any improper means to acquire knowledge of any trade secret formula or process claimed to be owned or possessed by Healthcare.

89.     An actual and justiciable controversy exists between EcoNatura and Healthcare as to the issue of whether EcoNatura has misappropriated the trade secrets of Healthcare.

90.     EcoNatura is therefore entitled to a declaratory judgment from this Court that it has not misappropriated any trade secret claimed to be owned or possessed by Healthcare.

## COUNT III
## BREACH OF CONTRACT
### (Confidentiality Agreement – Against Genovese and Healthcare)

91.     EcoNatura incorporates paragraphs 1-76 by reference.

92.     As set forth in paragraphs 35, 43, 49, 51, and 52, above, there was a valid and enforceable contract between EcoNatura and Genovese, or in the alternative Healthcare, whereby EcoNatura agreed to provide Genovese with confidential and proprietary information, including but not limited to product formulas and/or ingredient lists, for use in connection with the production, marketing and sale of products to and for customers who ultimately purchased products from EcoNatura for sale in the market.

93.     Genovese agreed that he would not disclosure, share, or otherwise use any confidential and/or proprietary information he obtained from EcoNatura without the express permission of EcoNatura.

94.     Under the agreement between the parties, EcoNatura provided Genovese with certain confidential and/or proprietary information including, but not limited to product ingredient lists, percentages of ingredients used and other product formulas (collectively "the Formulas").

95.     It was understood that Genovese was to keep the Formulas, as well as all concepts and business ideas, confidential and could not disclose or use the Formulas in any way without the permission of EcoNatura.

96.     Genovese has disclosed the Formulas to entities and/or individuals without the permission of EcoNatura, including but not limited to the unauthorized disclosure to Trinity Health Global, Pharmalive, Pharmacanna, Purmed, Cosmetic Solutions and/or an unknown product manufacturer in Arizona.

97.     On information and belief, Genovese has disclosed the Formulas to other entities or individuals without the permission of EcoNatura.

98.     Genovese has also used the Formulas to develop, by or on his behalf, products which compete directly against EcoNatura's products in the market, including but not limited to the CBD-based cooling cream sold by Pharmalieve referenced in paragraphs 72-73, above.  Such use is/was without the permission of EcoNatura.

99.     Genovese's use or disclosure of the Formulas and/or proprietary product concepts without the permission of EcoNatura is in breach of the agreement between the parties that the Formulas would be kept confidential.

100.    As a direct and proximate result of Genovese's breach or breaches of the parties' confidentiality agreement, EcoNatura has suffered damages, including but not limited to loss of revenues to which it would otherwise be entitled, loss of potential revenues, and in other amounts to be determined by the evidence.

101.    All conditions precedent to the institution of this Third Party Complaint have been performed, waived or excused.

102.    To the extent that it is determined that Healthcare was in existence at the time of the complained-of actions, then this Count is being asserted against it directly.

WHEREFORE, EcoNatura demands judgment against Genovese and/or Healthcare for compensatory damages and such other relief as the Court may find appropriate.

### COUNT IV
### BREACH OF CONTRACT
### (Mutual Non-Disclosure Agreement – Against Genovese)

103.    EcoNatura incorporates paragraphs 1-76 by reference.

104.    EcoNatura and Genovese entered into the NDA as set forth in paragraphs 27-31, above.

105.    The NDA is a valid and enforceable contract.

106.    Genovese has breached the NDA by disclosing the Formulas to entities and/or individuals without the permission of EcoNatura, including but not limited to the unauthorized disclosure to Trinity Health Global, Pharmalive, Pharmacanna, Purmed, Cosmetic Solutions and/or an unknown product manufacturer in Arizona.

107.    Upon information and belief, Genovese has disclosed the Formulas to other entities without the permission of EcoNatura, and in breach of the NDA.

108.    Genovese has also breached the NDA by developing, by or on his behalf, products which compete directly against products sold by or on behalf of EcoNatura in the market, including but not limited to the CBD-based cooling cream sold by Pharmalieve referenced in paragraphs 72-73, above.  Such use of the Formulas and/or other proprietary product concepts is/was without the permission of EcoNatura.

109.    Genovese's breach of the NDA was done in bad faith or in wanton, reckless or willful disregard of EcoNatura's rights and otherwise resulted in improper personal benefits to Genovese.

110.    As a direct and proximate result of Genovese's breach or breaches of the NDA, EcoNatura has suffered damages, including but not limited to loss of revenues to which it would otherwise be entitled, loss of potential revenues, and in other amounts to be determined by the evidence.

111.    All conditions precedent to the institution of this Third Party Complaint have been performed, waived or excused.

WHEREFORE, EcoNatura demands judgment against Genovese for compensatory damages and such other relief as the Court may find appropriate.

### COUNT V
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Florida Statutes, § 501.201 *et seq.* – Against Genovese and Healthcare)

112.    EcoNatura incorporates paragraph 1-76 by reference.

113.    Genovese and Healthcare have engaged in deceptive or unfair trade practices through their receipt of EcoNatura's confidential and proprietary formulas, ingredient lists, and other materials and subsequent use of those materials to create, or have created on their behalf, and/or sell or have sold on their behalf, products which unfairly compete directly with products manufactured by or on behalf of EcoNatura in the market.

114.    Genovese and Healthcare have further misrepresented to customers or potential customers that he and/or the company own intellectual property rights to those materials in an effort to solicit business and/or enhance their own credibility among customers or potential customers.

115.    Genovese or Healthcare's retention of the Formulas and/or other information provided to Genovese by EcoNatura, and subsequent use of the Formulas and/or other information to create or have created on their behalf or for their benefit, competing products sold in the market, adversely affects EcoNatura's ability to sell competing products and/or create similar products for other customers or potential customers and otherwise harms EcoNatura's ability to fairly compete in the market.

116.    Genovese and Healthcare therefore engaged in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of trade or commerce as prohibited by Florida Statutes, §501.204(1).

117.    As a direct and proximate result of Genovese and Healthcare's unfair and deceptive practices as alleged herein, EcoNatura has suffered actual damages, including but not limited to damages in the form of loss of sales, customers, and/or potential customers, and/or harm to the market value of its own competing products.

WHEREFORE, EcoNatura respectfully requests entry of a judgment against Genovese and Healthcare awarding actual damages, injunctive relief, attorney's fees and costs, pre- and post-judgment interest, and such other and further relief this Court deems just and proper.

## COUNT VI
### QUASI CONTRACT/UNJUST ENRICHMENT
#### (Against Genovese and Healthcare)

118.    EcoNatura incorporates paragraph 1-76 by reference.

119.    Alternatively, Genovese and Healthcare (to the extent it is determined to have been in existence at the time of the complained-of actions) have been unjustly enriched through the receipt of the Formulas and/or other material furnished by EcoNatura and subsequent improper use and/or disclosure these materials without compensation to EcoNatura.

120.     EcoNatura has conferred a benefit on Genovese and/or Healthcare by disclosing to them certain confidential and/or proprietary information, including but not limited to the Formulas, which Genovese then used to develop and/or have developed products which incorporate, in whole or in part, the Formulas.

121.     Genovese has direct knowledge of the benefits he and Healthcare have received through the possession of the Formulas and/or other material provided by EcoNatura.

122.     Genovese and/or Healthcare have accepted the benefits conferred upon them by EcoNatura by creating and/or having created on his and/or its behalf, and then selling and/or offering for sale either directly or through other legal entities, products which incorporate, in whole or in part, the Formulas and/or materials provided to Genovese, and then directly profiting from those sales.

123.     Genovese's and/or Healthcare's retention of the Formulas and/or other information provided by EcoNatura, and subsequent use of the Formulas and/or other information to create or have created on their behalf or for their personal benefit, competing products sold in the market, adversely affects EcoNatura's ability to sell competing products and/or create similar products for other customers or potential customers.

124.     It would be unjust or inequitable for Genovese or Healthcare to retain the benefit of his possession of the Formulas and/or other information provided by EcoNatura without compensation to EcoNatura.

125.     There is not an adequate remedy at law to compensate EcoNatura for Genovese's and/or Healthcare's unjust enrichment.

WHEREFORE, EcoNatura demands judgment against Genovese and/or Healthcare for unjust enrichment damages, permanent injunctive relief, and such other relief as the Court may find appropriate.

### COUNT VII
### QUANTUM MERUIT
### (Against Genovese and Healthcare)

126.    EcoNatura incorporates paragraph 1-76 by reference.

127.     Alternatively, EcoNatura has a claim against Genovese for quantum meruit.

128.    EcoNatura has conferred a benefit on Genovese and/or Healthcare (to the extent it was determined to be in existence) by disclosing to them certain confidential and/or proprietary information, including but not limited to the Formulas, which Genovese then used to develop and/or have developed products which incorporate, in whole or in part, the Formulas.

129.    Genovese and/or Healthcare have direct knowledge of the benefits received through the possession of the Formulas and/or other material provided by EcoNatura.

130.    Genovese and/or Healthcare have accepted the benefits conferred by EcoNatura by creating and/or having created on their behalf, and then selling and/or offering for sale either directly or through other legal entities, products which incorporate, in whole or in part, the Formulas and/or materials provided to Genovese, and then directly profiting from those sales.

131.    Genovese's and/or Healthcare's retention of the Formulas and/or other information provided by EcoNatura, and subsequent use of the Formulas and/or other information to create or have created on his behalf or for their personal benefit, competing products sold in the market, adversely affects EcoNatura's ability to sell competing products and/or create similar products for other customers or potential customers.

132.    It would be unjust or inequitable for Genovese and/or Healthcare to retain the benefit of their possession of the Formulas and/or other information provided to them by EcoNatura without compensation to EcoNatura.

133.    There is not an adequate remedy at law to compensate EcoNatura for Genovese's and/or Healthcare's unlawful retention of the benefits conferred upon him by EcoNatura.

WHEREFORE, EcoNatura demands judgment against Genovese and/or Healthcare for unjust enrichment damages, permanent injunctive relief, and such other relief as the Court may find appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Third Party Plaintiff EcoNatura All Healthy World, LLC, hereby demands judgment as follows:

A.  That judgment enter in favor of EcoNatura and against Genovese on Counts I through VII of the Counterclaim;

B.  That judgement enter in favor of EcoNatura and against Healthcare on Counts I through III and V through VII of the Counterclaim;

C.  That the Court enter a Declaratory Judgment that that neither Healthcare nor Genovese own or possess any trade secret or proprietary rights of any kind in connection with the CBD-based cream products that have been developed and produced by EcoNatura, manufactured by Rejuvenol, and ultimately sold by MedTerra which are the subject of the claims set forth in Healthcare's Complaint;

D.  That the Court enter a Declaratory Judgment that that Defendant/Counterclaim Plaintiff has not misappropriated any trade secret claimed to be owned or possessed by Healthcare and/or Genovese;

CASE NO.: 9:20-cv-81501-DMM

E.  The Plaintiff's Complaint be dismissed in its entirety, with prejudice;

F.  That judgment be entered for Defendant/Counterclaim Plaintiff and against Healthcare and/or Genovese in an amount equal to its costs expended, including a reasonable amount for its attorneys' fees;

G.  That EcoNatura be awarded monetary damages from Genovese and/or Healthcare in an amount to be determined at trial;

H.  That a permanent injunction be entered requiring Genovese, and all persons or entities acting under his direction or control, to cease all use of and destroy any and all formulas, ingredient lists, and/or other materials that were provided to him by EcoNatura;

I.  An accounting of all profits generated by Genovese and/or Healthcare and/or other entities from the sale of products which were creating using any formulas, ingredient lists or other materials provided to him by EcoNatura;

J.  That EcoNatura recovers prejudgment and postjudgment interest; and

K.  That EcoNatura be awarded all other relief to which it may now or hereafter be entitled.

## **DEMAND FOR JURY TRIAL**

Defendant and Counterclaim Plaintiff, EcoNatura, hereby demands a trial by jury on all claims so triable.

Dated: November 16, 2020

Respectfully submitted,

_____

Greg J. Weintraub
LASH & GOLDBERG, LLP
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL  33131-2158
Phone: (305) 347-4040
Fax: (305) 347-4050
gweintraub@lashgoldberg.com

30

CASE NO.: 9:20-cv-81501-DMM

-and-

Brian P. McGraw (pro hac vice to be filed)
Matthew Dearmond (pro hac vice to be filed)
MIDDLETON REUTLINGER
401 S. 4th Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
Email: bmcgraw@middletonlaw.com

COUNSEL FOR DEFENDANT/
COUNTERCLAIM PLAINTIFF/ THIRD PARTY
PLAINTIFF
ECONATURA ALL HEALTHY WORLD, LLC

CASE NO.: 9:20-cv-81501-DMM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on _____, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Southern District of Florida by using

the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

_____

**GREG J. WEINTRAUB**

**Service List:**

Leon F. Hirzel, Esq.,
Patrick G. Dempsey, Esq.
Alec P. Hayes, Esq.
HIRZEL DREYFUSS & DEMPSEY, PLLC
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Phone: 305-615-1617
*Counsel for Plaintiff, HCRMG*

Adam T. Rabin
arabin@mccaberabin.com
e-filing@mccaberabin.com
Robert C. Glass
rglass@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Ste. 201 West
Palm Beach, FL 33401
561.659.7878
*Counsel for MedTerra CBD, LLC*

Eric Lee
lee@leeamlaw.com Lee
& Amtzis, P.L.
5550 Glades Road, Ste. 401 Boca
Raton, FL 33431 561.981.9988
*Counsel for Rejuvenol Laboratories, Inc.*

# EXHIBIT 1

# MUTUAL NON-DISCLOSURE AGREEMENT

### between NoXeno Health Sciences, Inc., EcoNatura All Healthy World, LLC., and
### FoxFire Edibles, LLC.

This Mutual Non-Disclosure Agreement ("Agreement"), dated as of January 11, 2018, is made by and between, NoXeno Health Sciences, Inc, a Delaware Corporation with a place of business at 325 N. Maple Dr. PO Box 11356, Beverly Hills, CA 90213, EcoNatura All Healthy World, LLC., residing at 123 Soundview Terrace, Northport, NY 11768 and, FoxFire Edibles, LLC., and Sam Genovese, Jeff Fox, Robert Pinchuck with company residing at 4155 E. Jewell Ave. Suite 709 Denver, CO 80223, a Colorado corporation, sets forth the terms and conditions under which the undersigned as parties hereto will exchange confidential, proprietary or nonpublic information in connection with a potential "JV" business transaction between the Parties (the "Potential Transaction"). Each of the companies are referred to herein as a "Party" and collectively as the "Parties."

1.    In this Agreement, "Confidential Information" means all information disclosed (by whatever means and whether directly or indirectly) by or on behalf of one of (the "Disclosing Party") to the other ("Receiving Party"), including, but without limitation, information relating to the Disclosing Party's products, operations, processes, plans or intentions, product information, know-how, design rights, trade secrets, market opportunities, business plans, pricing, marketing strategies, and business affairs.

2.    The Receiving Party shall not, at any time:
   (a) use Confidential Information other than for the purpose of evaluating and negotiating the Potential Transaction; or
   (b) disclose Confidential Information to any person except in accordance with the terms of this Agreement.

3.    The Receiving Party shall use commercially reasonable efforts to prevent any use or disclosure of confidential Information that is not permitted or authorized under this agreement.

NoXeno -EcoNatura: Jama Russano, Initial (JR) _____ / Warren Wise, Initial (WW) _____

FireFox Edibles: Sam Genovese, Initial _____ (SG) / Jeff Fox, Initial (JF)_____/ Robert Pinchuck, Initial (RP) _____

4.      Except as required by applicable law or the order of a court of competent jurisdiction, the "Receiving Party" shall not disclose confidential information, without the express written consent of the "Disclosing Party". However, this obligation shall not apply to any confidential information which:

   (a)   is already known to the "Receiving Party" prior to its receipt from the "Disclosing Party"; or

   (b)   is at the date of this agreement, or at any time after that date becomes, publicly known other than by Receiving Party's breach of this agreement;

   (c)   is lawfully obtained from third party with full rights of disclosure; or

   (d)   is independently developed by the "Receiving Party" without use of or reference to the confidential information of the "Disclosing Party".

5.      Notwithstanding the provisions of paragraph 4, the "Receiving Party" may disclose confidential information to its employees or agents ("Representatives"), but only to the extent strictly necessary for the evaluation and negotiation of the agreement. Before disclosure of confidential information to such a person, the "Receiving Party" shall ensure that such person is fully aware of the "Receiving Party's" obligations under this agreement and shall procure that such person undertakes in writing to comply at all times with those obligations.

6.      Each Party agrees that it and its Representatives will not make any disclosure that discussions or negotiations are taking place concerning a potential transaction or any of the terms, conditions or other facts with respect to any such Potential Transaction, including the status thereof, or that you are evaluating the Potential Transaction or that such Party or its Representatives have received confidential information.

7.      Nothing in this Agreement shall be construed as granting either party any right or license under any patent, patent application or any other intellectual property right of the other party.

8.      No person gives a warranty or makes any other representation as to the accuracy or otherwise of the confidential information.

Initials: (JR)_____ /(WW)_____ / (SG)_____ / (JF)_____ /(RP)_____

9.      Each party will return promptly to the other upon demand all documents and materials made available by the other pursuant to the terms of this Agreement together with all copies and reproductions thereof.

10.     The provisions of this agreement shall remain in effect for a period of three (3) years; provided, however, that each "Receiving Party's" obligations of confidentiality and non-use with respect to any confidential information of the "Disclosing Party" will continue in effect until such information becomes subject to one of the exceptions specified in Section 4.

11.     Each Receiving Party agrees that money damages would not be a sufficient remedy for any breach of this agreement by such "Receiving Party" or its Representatives and that in addition to all other remedies the "Disclosing Party" shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach.

12.     This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California applicable to contracts executed in and to be performed in that state, without regard to its conflicts of law principles. Each Party hereby irrevocably and unconditionally submit to the exclusive jurisdiction of any State or Federal court sitting in Los Angeles, CA over any suit, action or proceeding arising out of or relating to this agreement (and you agree not to commence any action, suit or proceeding relating thereto except in such courts).

(This area is intentionally left blank)

Initials: (JR)_____ /(WW)_____ / (SG)_____ / (JF)_____ /(RP)_____

SIGNATURE PAGE

IN WITNESS WHEREOF, the Parties have caused this Mutual Non-Disclosure Agreement to be duly executed on their behalf as of the day and year first above written.

**Representatives of NoXeno Health Sciences, Inc. EcoNatura All Healthy World, LLC.**

*Warren Wise:*

By: _____ Email: _____

Its: _____ / Date: _____

*Jama Russano:*

By: _____ Email: _____

Its: _____ / Date: _____

**Representatives of FireFox Edibles, LLC.**

Sam Genovese:

By: _____ Email: _____

Its: _____ / Date: _____

Jeff Fox:

By: _____ Email: _____

Its: _____ / Date: _____

Robert Pinchuck:

By: _____ Email: _Pinchuck @ AOL.com____

Its: _Owner____ / Date: _01/17/18_____

# EXHIBIT 2

| | |
|---|---|
| **From:** | Sam Genovese |
| **To:** | Jama Russano |
| **Subject:** | Re: Eye serum/cream and Psoriasis cream |
| **Date:** | Monday, May 7, 2018 8:35:53 PM |

He's interested in what we have on hand that is high end
So maybe we give him what's in the basic formulation ingredient wise and take it from there .
I think 15 to 30gm size
He's not worried about minimum
They want to do 500-1000mg if possible
Can you get me an array of ingredients without going to deep into the formula like basic
components? That's all they need to know

Sent from my iPhone

On May 7, 2018, at 8:20 PM, Jama Russano <jama@econatura.com> wrote:

> Julio was looking up some of the formulations he has and enhancing them.
> @
> I need the following questions answered:
> 1. What size tube or jar is he looking for? Minimum silk screen printed tube runs
>    5,000 pieces.
>      They can fill 2,500 at a time.
>        @
> 2. How much and what level of CBD is he looking to put in?
> 3. Does he want a high-quality eye cream, where the ingredients are high end and
>    more expensive?
>      @
>      j•• •
>      @
>      @
> @
>
> **From:** Sam Genovese <velocitysam@gmail.com>^@
> **Sent:** Monday, May 07, 2018 7:05 PM
> t • Ƶ@ma@econatura.com
> **Subject:** Fwd: Eye serum/cream and Psoriasis cream
> @
> Can you send to me??
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** JP Larsen <jplarsen@medterracbd.com>^
>> **Date:** May 7, 2018 at 6:26:47 PM EDT
>> t • ƵSam Genovese <velocitysam@gmail.com>^

**Subject: Eye serum/cream and Psoriasis cream**

S•• L
@
Please send ingredients for these! Thanks.

**J.P. Larsen**

President

402.880.2494 | jplarsen@medterracbd.com

22981 Mill Creek Dr Unit A | Laguna Hills, CA  92653



# EXHIBIT 3

| | |
|---|---|
| **From:** | Sam Genovese |
| **To:** | jama |
| **Cc:** | mromero@hcrmg.org |
| **Subject:** | roll on |
| **Date:** | Monday, June 11, 2018 11:47:12 AM |

Medterra is looking to do a roll on similar to Biofreeze

Do we have a formula that is similar?
what size s should we recommend?

Thanks
Sam

# EXHIBIT 4

| | |
|---|---|
| **From:** | Jama Russano |
| **To:** | Lisa Klancher; Sam Genovese; mromero@hcrmg.org |
| **Subject:** | Updated Ingredient Deck for Chill |
| **Date:** | Thursday, February 14, 2019 12:16:20 PM |
| **Attachments:** | CHILL Updated Ingredient Deck 02142019.docx |

We have updated the ingredient deck for chill and boost the preservative system to last for a longer period. The feel and texture of the product has not changed at all.

Also, we were originally going to use 0.025% of Cardamom in the scent, however, we felt it was not needed due to the overwhelming scent of menthol, camphor and Lavender. Even though Cardamon is a known myrcene with certain benefits,  it was listed on Prop 65.

PLEASE TAKE OFF 'HORMONE DISRUPTOR FREE".
The testing is very expensive and we would have to test every ingredient and I don't think they want to pay $10K for it.

Let me know if you have any questions.


Regards,

Jama Russano
**email: Jamarussano2@gmail.com**
**Office: 631-586-9833**